UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.S.S. CONSTRUCTION CORP.,

                    Plaintiff,

          v.

CENTURY SURETY COMPANY, K.S. BILLING
& ASSOCIATES, INC., and MORSTAN GENERAL
AGENCY,

                    Defendants.

**OPINION AND ORDER**

15 Civ. 2801 (ER)

Ramos, D.J.:

      This action arises from an insurance coverage dispute between Plaintiff M.S.S.

Construction Corporation ("Plaintiff") and Defendants Century Surety Company ("Century"),

K.S. Billing and Associates, Inc. ("K.S. Billing), and Morstan General Agency ("Morstan," and

collectively "Defendants").  The case was originally filed in New York State Supreme Court and

removed to this Court on the basis of diversity jurisdiction.  Before the Court is Plaintiff's

motion to remand the action back to state court based on the joinder of two non-diverse

Defendants, K.S. Billing and Morstan.  Century opposes this motion, contending that Plaintiff

fraudulently joined the non-diverse Defendants for the sole purpose of destroying federal

jurisdiction.  For the reasons discussed below, Plaintiff's motion to remand is GRANTED.

I.      **Factual Background**[1]

    **A.  The Parties**

Plaintiff is a residential and commercial construction company incorporated under the laws of New York State with its principal place of business in Bronx, New York.  Am. Compl. ¶ 1.

Defendant Century is incorporated in Ohio with its principal place of business in Michigan.  Answer ¶ 2.  Century is licensed in New York State to provide insurance and suretyship for private and public construction projects.  Am. Compl. ¶ 2.  During the time relevant to this action, Century allegedly insured Plaintiff.  *Id.* ¶ 14.

Defendant, K.S. Billing is incorporated under the laws of New York State with its principal place of business in Richmond Hill, New York.  *Id.* ¶ 3.  K.S. Billing allegedly acted as a producer in obtaining the insurance policy at issue.  *Id.* ¶¶ 10, 13.  The parties, however, dispute whether K.S. Billing acted as Plaintiff's insurance broker and/or agent.  *See* Pl.'s R. Mem. at 10 (Plaintiff contends that "it has not yet been established whether K.S. Billing was an agent or broker."); Def.'s Opp'n Mem. at 16 (Century asserts that "[t]here is no dispute that K.S. Billing acted as [Plaintiff's] broker in the procurement of insurance coverage.").[2]

---

[1] The following facts, drawn from the Amended Complaint, are presumed to be true for the purposes of Plaintiff's motion to remand.  *See Fed. Ins. Co. v. Tyco Int'l Ltd.,* 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." (internal citations omitted)).  The Court may also consider the parties' affidavits and attached exhibits in deciding the motion to remand.  *See Gov't. Employees Ins. Co. v. Saco*, No. 12 Civ. 5633 (NGG) (MDG), 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015) ("Because this is a jurisdictional inquiry, a court can look beyond the face of the complaint in deciding a motion to remand." (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461-62 (2d Cir. 1998)).

[2] "A producer is defined as any person required to be licensed to sell, solicit or negotiate insurance.  A producer can be an Agent, Broker, Consultant, Reinsurance Intermediary or Excess Lines Broker. . . . New York State allows producers to have both agent and a broker licenses."  *See* http://www.dfs.ny.gov/insurance/agbrok/licfaqs.htm (last visited October 28, 2015).  "An insurance broker is 'any person, firm, association or corporation who or which for any compensation, commission or other thing of value acts or aids in any manner in soliciting, negotiating or selling, any insurance or annuity contract or in placing risks or taking out insurance, on behalf of an insured other than

Defendant, Morstan, a corporation or other business entity of New York State, is an insurance agent with its principal place of business in Manhassett, New York.  Am. Compl. ¶ 4. Morstan, acting as Century's local insurance agent, issued the Century insurance policy at the center of this dispute.  *Id.* ¶ 14.

### B.  The Insurance Policy

In March 2012, Plaintiff asked K.S. Billing to procure an insurance policy for Plaintiff's construction business that would provide coverage in connection with its contract to lease and erect sidewalk sheds and other equipment to the New York City Housing Authority ("NYCHA") for a construction project located at 1471 Wilson Avenue, Bronx, New York (the "NYCHA Project").  *Id.* ¶¶ 6, 10.  According to Plaintiff, K.S. Billing was aware that Plaintiff wanted to obtain coverage for the NYCHA Project and knew, or should have known, that NYCHA requires that its construction vendors, including Plaintiff, obtain general liability insurance coverage and name NYCHA as an additional insured party.  *Id.* ¶¶ 7, 2 (count 2).[3]  Plaintiff engaged K.S. Billing allegedly in reliance on its expertise as an advisor and procurer of insurance policies, including commercial general liability policies.  *Id.*  ¶¶ 11, 12.

---

himself, herself or itself or on behalf of any licensed insurance broker . . . .'"  *B & A Demolition and Removal, Inc. v. Markel Ins. Co.*, 941 F. Supp. 2d 307, 315 (E.D.N.Y. 2013) (citing N.Y. Ins. Law § 2101((c)); *see also* http://www.dfs.ny.gov/insurance/agbrok/licfaqs.htm (last visited October 28, 2015) ("An insurance broker represents the public and can sell insurance for any insurance company licensed in New York State which deals with brokers.").  "[A]n insurance agent is 'any authorized or acknowledged agent of an insurer, fraternal benefit society or health maintenance organization . . . and any sub-agent or other representative of such an agent, who acts as such in the solicitation of, negotiation for, or sale of, an insurance, health maintenance organization or annuity contract, other than as a licensed insurance broker . . . .'"  *B & A Demolition and Removal, Inc.*, 941 F. Supp. 2d at 315 (citing N.Y. Ins. Law § 2101(a)); *see also* http://www.dfs.ny.gov/insurance/agbrok/licfaqs.htm (last visited October 28, 2015) ("An insurance agent represents an insurance company(ies) and sells insurance for which ever company(ies) have appointed that agent.").  Generally, "a broker is the representative of the insured, and an agent is a representative of the insurer."  *B & A Demolition and Removal, Inc.*, 941 F. Supp. 2d at 315 (internal quotations omitted).

[3] The Amended Complaint lists paragraphs numbered six through thirty-three under count one and paragraphs one through six under count two.  *See* Am. Compl.  In order to distinguish between paragraphs of the same number, paragraphs listed under count 2 will be labeled as such.

On March 5, 2012, Plaintiff and K.S. Billing submitted Plaintiff's "Accord Commercial Insurance Application" (the "Application") to Century through its agent, Morstan, for a commercial general liability insurance policy.  *Id.* ¶¶ 10, 13; Donny Dement's Affidavit ("Dement Aff.") in Support of Defendant's Motion for Summary Judgment ¶ 5, Ex. B.[4]  Plaintiff alleges that it requested coverage for the classification codes "painting" and "carpentry-NOC."[5] Am. Compl. ¶ 13; *see also* Korzun Aff. Ex. B.  Plaintiff claims that it specifically requested coverage for "carpentry-NOC"—an insurance classification code for carpentry operations not specifically described by another classification—to ensure that the sidewalk sheds used in the NYCHA Project were covered by the applied-for policy.  Am. Compl. ¶¶ 13, 15.  Plaintiff also allegedly requested that the policy not include any exceptions for exterior work to further ensure the sidewalk sheds would not be excluded from coverage, which according to Plaintiff, is standard practice when insuring sidewalk sheds.  *Id.* ¶ 13.

Relying on a different version of the Application, Century disputes that Plaintiff requested coverage for "carpentry-NOC" and instead claims that the commercial general liability section of the Application submitted to Century included only the classifications "painting" and

---

[4] Century's motion for summary judgment is not currently before the Court.  On September 15, 2015, before the Court held a pre-motion conference as required by the Court's individual practices, Century filed a cross motion for summary judgment opposing Plaintiff's motion to remand and requesting the action against it be dismissed.  Docs. 31, 35.  On September 25, 2015, Century withdrew its cross motion for summary judgment leaving only the motion to remand pending before this Court.  Docs. 39, 46.

[5] Plaintiff attached a copy of the Application to Attorney Timothy J. Korzun's Affidavit ("Korzun Aff.") in Support of Plaintiff's Motion to Remand.  *See* Korzun Aff. Ex. B.  Plaintiff claims that the Application submitted as Exhibit B was produced by Century as part of Century's Rule 26 discovery materials.  *See* Pl.'s R. Mem. at 1.  Century disputes the accuracy of Plaintiff's Exhibit B, noting that the "proposed effective dates" listed on the application seem to have been altered to read 2012.  Def.'s Opp'n Mem. at 11.  Century also points out that the date listed on the Application, December 20, 2010, occurred approximately two years before Plaintiff sought insurance coverage from Century, and that Century has no record of the Application being submitted at that time.  *Id.*  Century attached what it claims is a "true and accurate" copy of the Application as part of the Dement Affidavit.  *See* Dement Aff. Ex. B.  While the purported alterations in Plaintiff's submitted Application are concerning, the Court does not judge the credibility of its exhibit on a motion to remand.

"carpentry-interior."  Def.'s Opp'n Br. at 3, 11; Dement Aff. Ex. B at 3.[6]  It should be noted, however, that even Century's version of the Application lists "carpentry-NOC" in the section entitled "Nature of Business/Description of Operations by Premise(s)."  Dement Aff. Ex. B at 1. Accordingly, notwithstanding the differences in the two Applications, both Applications list "carpentry-NOC" as a classification code.  *See* Korzun Aff. Ex. B. at 2; Dement Aff. Ex. B at 1.

Also on March 5, 2012, Morstan, on behalf of Century, provided Plaintiff with a general liability quote, listing the coverage classification as "carpentry-interior."  Dement Aff. ¶ 6, Ex. A.  Two days later, on March 7, 2012, Century contends that K.S. Billing requested Morstan bind the coverage stated in the March 5, 2012 quote.  Dement Aff. ¶ 8.  Also on March 7, 2012, Plaintiff and NYCHA formally entered a contract for Plaintiff to erect and lease sidewalk sheds to NYCHA for use in the NYCHA Project.  Am. Compl. ¶ 6.  On March 8, Plaintiff's coverage was bound.  Dement Aff. ¶ 10.

On March 20, 2012, Century, through Morstan, issued policy number CCP757251 to Plaintiff for the period beginning March 7, 2012 through March 7, 2013.  Am. Compl. ¶ 14.  A copy of the policy, issued by Century and signed by Morstan, was sent to Plaintiff and K.S. Billing.  *Id.* ¶ 17.  The policy provided "General Liability-Contractors" coverage for, *inter alia*, bodily injury and property damage arising from carpentry work performed at the NYCHA Project.  *Id.* ¶¶ 20, 21; Dement Aff. Ex. D; Korzun Aff. Ex. C.  The policy contained various endorsements, including an endorsement that limited the commercial general liability coverage to specific classifications listed therein—"painting-interior-buildings or structures" and "carpentry-interior."  Am. Compl. ¶ 16; Dement Aff. Ex. D at 62; Korzun Aff. Ex. C at 6.  It is not disputed that the policy issued by Century did not include the classification "carpentry-

---

[6] The page numbers are based on ECF pagination.

NOC," which Plaintiff contends would have covered claims other than those arising out of interior painting and carpentry work. *Id.*

Plaintiff contends that K.S. Billing, as the insurance producer, and Morstan, as the local insurance agent, owed Plaintiff a duty to procure and issue the policy requested by Plaintiff but breached that duty by procuring and issuing a non-conforming policy. Am. Compl. ¶¶ 2 (count 2), 6 (count 2). Plaintiff also alleges that Century and Morstan were aware of the classification code change but did not alert Plaintiff to the change in coverage. *Id.* ¶¶ 17, 18. Moreover, Plaintiff asserts that K.S. Billing did not advise or recommend identifying NYCHA as an additional insured under the policy. *Id.* ¶ 13.

Plaintiff also alleges that the policy contains a duty to defend provision and a "Blanket Additional Insured" endorsement that extended coverage "to include any person or organization you [Plaintiff] are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the occurrence of any loss" and thus, NYCHA is an additional insured under the policy. *Id.* ¶¶ 20, 22. Century claims that the policy contains no "Blanket Additional Insured" endorsement, nor names NYCHA as an additional insured. Answer ¶ 20; Def.'s Opp'n Mem. at 12. This Court has identified no "Blanket Additional Insured" endorsement in the policy. *See* Korzun Ex. C; Dement Ex. D. While NYCHA is listed as the Certificate of Liability Insurance holder, the certificate explicitly states that it "confers no rights upon the certificate holder [and] does not amend, extend or alter the coverage afforded by the policies below." Korzun Aff. ¶ 6, Ex. D.

On March 29, 2012, non-party Majestic Services Company ("Majestic") inspected Plaintiff's business allegedly on Morstan's request. Dement Ex. C. As part of Majestic's investigation, Majestic interviewed Manjit Singh ("Singh"), Plaintiff's principal and identified in

Majestic's report as "the owner for this risk." *Id.* Singh allegedly stated that approximately 50% of Plaintiff's work involves interior painting while the other 50% consists of carpentry work and that 100% of services provided by Plaintiff are interior. *Id.*

### C.  Underlying Personal Injury Action and Denial of Coverage

From March 2012 through March 2013, Plaintiff installed and leased sidewalk sheds to NYCHA. Am Compl. ¶ 23. On August 12, 2012, Plaintiff and NYCHA received notice of a personal injury suit filed in New York State Supreme Court, Bronx County by Rodney Ortiz, Jr. and his father, Rodney Ortiz, alleging that on July 9, 2012, Mr. Ortiz Jr. suffered injuries involving the sidewalk sheds leased by Plaintiff to NYCHA (the "Underlying Action"). *Id.* ¶ 24. NYCHA demanded that Plaintiff and Plaintiff's insurer defend and indemnify NYCHA for any liability resulting from the Underlying Action. *Id.* ¶¶ 25, 26, 29. On October 1, 2012, NYCHA and Plaintiff, through K.S. Billing, notified Century of the Underlying Action and requested the appointment of counsel pursuant to the duty to defend clause in the policy. *Id.* ¶ 26; Affidavit of Andrew Malone in Support of Century's Motion for Summary Judgement ("Malone Aff.") ¶¶ 3, 4.

On October 12, 2012, Century issued a letter to Plaintiff partially disclaiming coverage for the Underlying Action because the policy "excludes coverage for Bodily Injury or Property damage arising from classification or operations" not listed in the policy and denied that NYCHA is an additional insured under the policy. *See* Malone Aff. ¶¶ 8, 9, Ex. 1. Century, however, stated that "[a]t present, we have insufficient information to make a final determination of this matter" and requested Plaintiff provide a copy of the contract between Plaintiff and NYCHA. *Id.*

On June 18, 2013, Century issued another denial to Plaintiff reiterating the reasons stated

in the October 12, 2012 letter, namely that the installation and maintenance of sidewalk sheds is

specifically not listed and is not covered by the classifications or operations listed in the policy.

Korzun Aff. Ex. E; Am Compl. ¶ 28.  Century also advised Plaintiff that NYCHA's request to be

given additional insured status under the policy was denied because NYCHA is not listed as an

additional insured.  Korzun Aff. Ex. E.

On July 2, 2013, NYCHA demanded that Century defend and indemnify NYCHA in the

Underlying Action and was again denied.  Korzun Aff. Ex. F; Am. Compl. ¶ 28.  As a result,

NYCHA hired counsel to defend itself in the Underlying Action, filed a third party claim against

Plaintiff seeking attorney's fees, and withheld its final payment to Plaintiff until Plaintiff

provides sufficient proof that its insurance is effective and it will indemnify NYCHA.  Am.

Compl. ¶¶ 29, 32.

On August 5, 2013, Century reiterated to Plaintiff that it "denies and disclaims any

obligation to defend or indemnify" Plaintiff and/or NYCHA in connection with the Underlying

Action for the reasons previously stated.  *Id.* ¶ 27; Korzun Aff. Ex. G; Malone Ex. 2.

## II.    Procedural History

On March 18, 2015, Plaintiff filed a complaint against Century Surety Company, Century

Insurance Group, and Meadowbrook Insurance Group in the Supreme Court of New York,

Bronx County.  Doc. 1.  On April 10, 2015, Defendants removed the action to this Court

pursuant to 28 U.S.C. §§ 1332, 1446(a).  *Id.*  Defendants filed their Answer to the Complaint on

April 15, 2015.  Doc. 4.

On July 6, 2015, Plaintiff filed an Amended Complaint adding K.S. Billing and Morstan

as Defendants and removing Century Insurance Group and Meadowbrook Insurance Group as

Defendants.[7]  Doc. 12.  Plaintiff alleges two causes of action against Century, Morstan, and K.S. Billing for:  (1) "insurance coverage, defense, indemnity, [and] declaratory relief;" and (2) "errors and omissions, coverage, [and] declaratory relief."  Am. Compl. ¶¶ 33(a)-(e) (count one); 6(a)-(e) (count two).  The first cause of action sounds in contract, while the second cause of action sounds in tort.  For both causes of action, Plaintiff seeks a declaratory judgment against all Defendants that the claims asserted in the Underlying Action are covered by Plaintiff's insurance policy and that NYCHA is an additional insured under the policy, and thus Defendants have an obligation to defend and indemnify Plaintiff and NYCHA in the Underlying Action.  *Id.*

At a conference held before this Court on July 29, 2015, Plaintiff was granted leave to file a motion to remand.  As discussed *supra* at Section I.b, on September 15, 2015, as part of Century's opposition to Plaintiff's motion to remand, Century filed a cross motion for summary judgment.  Doc. 31.  On September 25, 2015, Century withdrew its cross motion for summary judgment pending a pre-motion conference to be held before this Court on October 2, 2015. Docs. 39, 46.  At that pre-motion conference, the parties agreed that leave to file Century's summary judgment motion would be determined after the Court decided the motion to remand.

## III.    Legal Standard

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  According to the Second Circuit, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe

---

[7] Newly added Defendants K.S. Billing and Morstan have not yet been served in this action.  Doc. 38

the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (internal citation omitted). "'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'" *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). Therefore, the party seeking removal bears the burden of proving that the jurisdictional and procedural requirements of removal have been met. *Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)).

Where, as here, "removal is based on diversity jurisdiction; there must be complete diversity of citizenship between the plaintiff(s) and defendant(s)." *Sons of the Revolution in New York Inc. v. Travelers Indem. Co. of Am.*, No. 14 Civ. 03303 (LGS), 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014). Completed diversity existed at the time Century removed the action to this Court. Doc. 1. Plaintiff then, however, joined two non-diverse Defendants and sought remand for lack of jurisdiction. Docs. 12, 21. Accordingly, Section 1447(e), which states "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court," applies. 28 U.S.C. § 1447(e); *see also id.* at §1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). "[T]he decision to join new parties, even if those parties destroy diversity and require a remand, is within the sound discretion of the trial court." *Moncion v. Infra–Metals Corp.*, No. 01 Civ. 11389 (RLE), 2002 WL 31834442, at *2 (S.D.N.Y. Dec. 18, 2002); *McGee v. State Farm Mut. Auto. Ins. Co.*, 684 F. Supp. 2d 258, 261 (E.D.N.Y. 2009). However, "[j]oinder

is appropriate under § 1447(e) only when the new parties are proper under Rule 20(a) of the

Federal Rules of Civil Procedure." *Hosein v. CDL W. 45th St., LLC*, No. 12 Civ. 06903 (LGS),

2013 WL 4780051, at *4 (S.D.N.Y. June 12, 2013) (citing *Vanderzalm v. Sechrist Indus., Inc.,*

875 F. Supp. 2d 179, 183 (E.D.N.Y. 2012)).

## IV.   Discussion

There is no dispute that complete diversity does not exist as the parties are currently

constituted.  Plaintiff and Defendants K.S. Billing and Morstan are all citizens of New York.

Am. Compl. ¶¶ 1-4.  Plaintiff contends that K.S. Billing and Morstan were properly joined under

Rule 20(a)(2) and thus, this action must be remanded.  Pl.'s Mem. at 4-6.  Century claims that

remand is not required because joinder was fraudulently undertaken to defeat this Court's

diversity jurisdiction.  Def.'s Opp'n Mem. at 16-19; *see also MBIA Ins. Corp. v. Royal Bank of

Can.*, 706 F. Supp. 2d 380, 388 (S.D.N.Y. 2009); *Intershoe, Inc. v. Filanto S.P.A.,* 97 F. Supp. 2d

471, 474 (S.D.N.Y. 2000) ("An exception to th[e] principles [of diversity] applies when a non-

diverse party is 'fraudulently joined' in order to defeat complete diversity").  In order to decide

the present dispute, the Court first evaluates whether joinder is appropriate under Rule 20 and, if

it is, determines whether joinder is fundamentally fair.  *See Briarpatch Ltd., L.P. v. Pate*, 81 F.

Supp. 2d 509, 515 (S.D.N.Y. 2000) ("District courts in this circuit have generally agreed that in

exercising the discretion whether to admit new parties, courts first consider whether joinder

would be appropriate under Rule 20 [of the Federal Rules of Civil Procedure] and then proceed

to weigh the competing interests in efficient adjudication and the need to protect diversity

jurisdiction from manipulation." (alteration in original)); *McGee*, 684 F. Supp. 2d at 262.

### A.  Permissive Joinder under Rule 20(a)(2)

Pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure parties may be joined as defendants in an action if:  "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Because federal courts should "entertain[ ] the broadest possible scope of [an] action consistent with fairness to the parties," the "joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966); *Ruiz v. Forest City Enter., Inc.*, No. 09 Civ. 4699 (RJD) (MDG), 2010 WL 3322505, at *1 (E.D.N.Y. Aug. 20, 2010).

The newly added Defendants, K.S. Billing and Morstan, were properly joined pursuant to Rule 20(a)(2).  Plaintiff's right to relief against all three Defendants arises from the same series of transactions or occurrences—the procurement and issuance of Plaintiff's general commercial liability insurance policy—and likely will result in common questions of law and fact arising between Defendants.  Century, however, claims that no common questions of law or fact exist because the claims against Century are based in contract and may be decided solely on the policy's allegedly unambiguous language, while the claims against K.S. Billing and Morstan are based in tort and require the Court to resolve various factual issues, including what representations where made by and to which parties.  *See* Def.'s Opp'n Mem. at 14-15.  Century also asserts that Plaintiff's potential recovery against K.S. Billing and/or Morstan has no impact on whether Century has an obligation to defend or indemnify Plaintiff or NYCHA in the Underlying Action.  *Id.* at 1-2.  Contrary to Century's contention, Plaintiff does allege contract and tort claims against all Defendants.  Am. Compl. ¶¶ 33, 6 (count two).  Moreover, even if

Plaintiff only asserted a breach of contract claim against Century and a tort claim against K.S. Billing and Morstan, joinder would still be proper. *See Vanderzalm*, 875 F. Supp. 2d at 183 ("the sole presence of two different legal claims does not prevent joinder where all claims arise from a single occurrence."). Evidence regarding how the insurance policy was procured and issued underlies all of Plaintiff's allegations. In fact, Century concedes that if the Court found the policy to be ambiguous, the parties' intent would be at issue and the Court would have to review K.S. Billing's involvement in the transaction to determine the parties' intentions. *See* Def.'s Opp'n Mem. at 10-11. Common questions of law and fact will arise in this action and thus, the joinder of K.S. Billing and Morstan is proper under Rule 20.

### B.  The Fundamental Fairness of Joinder

In addition to evaluating the appropriateness of joinder under the two factors listed in Rule 20(a)(2), courts also evaluate four additional factors to determine whether joinder comports with the principles of fundamental fairness. These four factors are: "(1) any delay, and its reasons, in [amending], (2) any resulting prejudice to the defendants, (3) the likelihood of multiple litigations, and (4) the plaintiff's motivation in [amending]." *McGee*, 684 F. Supp. 2d at 263 ("[T]hese four factors are not exclusive, but instead represent factors that courts have found most useful to consider in weighing the interests for and against joinder and remand."); *see also Cooper v. Trustees of Coll. of Holy Cross*, No. 13 Civ. 8064 (KPF), 2014 WL 2738545, at *8 (S.D.N.Y. June 17, 2014); *Hosein*, 2013 WL 4780051, at *4; *Briarpatch Ltd., L.P.*, 81 F. Supp. 2d at 515. All four factors weigh in favor of remand.

### i.  Delay and the Reason for Delay

The first factor, delay and the reason for any delay, "is measured from the date of removal." *Cooper*, 2014 WL 2738545, at *8 (citing *Nazario v. Deere & Co.*, 295 F. Supp. 2d

360, 363 (S.D.N.Y. 2003)); *Hosein*, 2013 WL 4780051, at *5. This action was removed on April 10, 2015, and the Amended Complaint was filed approximately three months later on July 6, 2015. Docs. 1, 12. Based on the facts of this case, this relatively brief delay is not unreasonable. *First*, Plaintiff filed the Amended Complaint within the Court ordered deadlines of July 6, 2015, to add new defendants, and August 1, 2015, to file an amended complaint. *See* Doc. 18 (discovery plan and scheduling order); *Hosein*, 2013 WL 4780051, at *5 (finding the fact that the plaintiff's filing of the Amended Complaint complied with the court ordered deadline was a mitigating factor that counterbalanced the six month delay in amending). *Second*, Plaintiff explained that it added the new Defendants after reviewing discovery received from Century that showed the Application submitted by K.S. Billing requested coverage for classification code "carpentry-NOC" but the policy did not include that classification code. Pl.'s Mem. at 4, 8-9; *Ambac Assurance Corp. v. EMC Mortgage Corp.*, No. 08 Civ. 9464 (RMB) (THK), 2011 WL 566776, at *3 (S.D.N.Y. Feb. 8, 2011) (finding no unreasonable delay where plaintiff was not in possession of the full facts when it first filed suit) (adopting report and recommendation).

### ii. Prejudice to Defendant

Regarding the second factor, Century is not prejudiced by permitting joinder because this action is still in its preliminary stages and discovery is ongoing. Century's contention that it is prejudiced because it will be subject to discovery unrelated to the legal claims against it and the resulting delay, is without merit. Def.'s Opp'n Mem. at 15. As discussed *surpa*, discovery from K.S. Billing and Morstan is related to the claims against Century. Moreover, Century provides "no evidence that permitting the joinder of [K.S. Billing and Morstan] will require Defendant[] to revise or abandon a litigation strategy for which resources have already been expended."

*Hosein*, 2013 WL 4780051, at *5; *Amon v. Nelson*, No. 91 Civ. 3844 (MBM), 1992 WL 8337, at *4 (S.D.N.Y. Jan. 15, 1992).

### iii.    The Likelihood of Multiple Litigations

As for the third factor, the likelihood of multiple litigations, courts "consider whether denying joinder could result in two parallel litigations—one in state court and one in federal court." *Hosein*, 2013 WL 4780051, at *6 (citing *Vanderzalm*, 875 F. Supp. 2d at 186).  Here, if the Court denies remand Plaintiff would have to press its claims against K.S. Billing and Morstan in state court. *See id.*  Permitting joinder and remanding this action eliminates the possibility of multiple litigations and the potential for inconsistent outcomes.

### iv.    Plaintiff's Motive in Amending

In determining the last factor, the plaintiff's motivation in amending the complaint, "courts typically look to the timing of the joinder, the circumstances of the case, and whether there is a cause of action against the non-diverse defendant." *Ruiz*, 2010 WL 3322505, at *3. Where "a plaintiff discovers new information, subsequent to filing its complaint that warrants the addition of new parties, courts have routinely held that no inference arises that the plaintiff was motivated to join the defendant solely to defeat jurisdiction." *Id.* (quoting *Roll On Express, Inc. v. Travelers Indem. Co. of Conn.*, No. 09 Civ. 213 (RLM), 2009 WL 1940731, at *6 (E.D.N.Y. July 2, 2009)); *see also Cooper*, 2014 WL 2738545, at *9.  Here, Plaintiff contends that it amended its complaint to join K.S. Billing and Morstan as Defendants after receiving documents from NYCHA and from Century that the Application submitted by K.S. Billing to Morstan requested coverage for classification code "carpentry-NOC," but that the policy issued by Morstan did not include that coverage.  Pl.'s Mem. at 4, 7.  Plaintiff contends that it did not have this information prior to filing its original complaint.  *Id.*  Century does not dispute this

characterization but rather claims that Plaintiff amended the complaint and fraudulently joined the non-diverse Defendants "solely to destroy diversity jurisdiction."  Def.'s Opp'n Mem. at 15.

"Under the principle of fraudulent joinder, 'a non-diverse defendant will be disregarded in ascertaining the existence of diversity on a remand motion if that defendant has no real connection to the case and is named merely to defeat diversity jurisdiction.'"  *Dexter v. A C & S Inc.*, No. 02 Civ. 6522 (RCC), 2003 WL 22725461, at *1 (S.D.N.Y. Nov. 18, 2003) (quoting *Vasura v. Acands*, 84 F. Supp. 2d 531, 539 (S.D.N.Y. 2000)); *see also Pampillonia*, 138 F.3d at 460-61.  "If a removing defendant can prove that the non-diverse party was fraudulently joined, the federal court will retain jurisdiction over the removed action so long as the requirements of jurisdiction are otherwise met."  *Segal v. Firtash*, No. 13 Civ. 7818 (RJS), 2014 WL 4470426, at *3 (S.D.N.Y. Sept. 9, 2014) (citing *Sonnenblick–Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 88 (S.D.N.Y. 1996)).  "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity," the Second Circuit requires the defendant to "demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."  *Pampillonia*, 138 F.3d at 461; *see also Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 207 (2d Cir. 2001); *Briarpatch Ltd.*, 373 F.3d at 516.  "The defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff."  *Pampillonia*, 138 F.3d at 461; *MBIA Ins. Corp.*, 706 F. Supp. 2d at 393.

Century does not claim that Plaintiff engaged in outright fraud, the Court thus looks to whether there is any possibility of recover against the non-diverse Defendants.  "[A]bsent 'outright fraud, the fraudulent joinder analysis focuses on whether recovery is *per se* precluded."

*Segal*, 2014 WL 4470426, at *3 (internal quotations and citations omitted); *Fed. Ins. Co.*, 422 F.

Supp. 2d at 377-78; *MBIA Ins. Corp.*, 706 F. Supp. 2d at 393 ("fraudulent joinder is not shown if

the plaintiff does in fact have a valid claim against the non-diverse defendants") (quoting *Brown

ex rel. Brown v. Noxubee Gen. Hosp.*, No. 08 Civ. 3249 (JBW), 2008 WL 4561628, at *3

(E.D.N.Y. Oct. 10, 2008)).  To determine whether a claim is stated against the non-diverse

defendants, a court applies state law, including its pleading standard.  *See Fed. Ins. Co.*, 422 F.

Supp. 2d at 378 ("'Joinder will be considered fraudulent when it is established that there can be

no recovery [against defendants] under the law of the state on the cause alleged.'" (quoting

*Whitaker*, 261 F.3d at 207)); *see also MBIA Ins. Corp.*, 706 F. Supp. 2d at 394 ("[e]ven though

federal law applies to the question of fraudulent joinder, the ultimate question is whether . . .

state law might impose liability on the facts involved. . . . Furthermore, courts apply the state

pleading rules . . . in deciding whether a plaintiff could have asserted a viable claim in state court

based on that pleading." (internal citations and quotations omitted)).  Century contends that

Plaintiff cannot state a cause of action based in contract or tort under New York law against

either K.S. Billing or Morstan.[8]

### 1.  Count 1:  Breach of Contract

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2)

adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  *Fischer &

Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *MBIA Ins. Corp.*, 706 F.

Supp. 2d at 396.  Century contends that Plaintiff cannot state a cause of action for breach of

contract against K.S. Billing or Morstan because Plaintiff does not allege the existence of an

agreement between K.S. Billing or Morstan and Plaintiff.  Def.'s Opp'n Mem. at 17.  Moreover,

---

[8] The parties do not dispute that New York law applies.

Century claims that Morstan, acting as Century's agent, cannot be held liable for Century's alleged breach of contract. *Id.* However, Century has not met its burden to establish by clear and convincing evidence that there is no possibility that Plaintiff can sustain a claim against Morstan or K.S. Billing for breach of contract for two reasons.

*First*, while "generally, a party who is not a signatory to a contract cannot be held liable for breaches of that contract," *MBIA Ins. Corp.*, 706 F. Supp. 2d at 396 (collecting cases), a non-signatory may be held liable for breach of contract where the non-signatory (1) is the alter ego of the signatory, *id.* at 396-97(citing *Sheridan Broad. Corp. v. Small*, 798 N.Y.S.2d 45, 45, 19 A.D.3d 331, 332 (1st Dep't 2005); *Rivera v. Citgo Petroleum Corp.*, 583 N.Y.S.2d 159, 159, 181 A.D.2d 818, 819 (2d Dep't 1992)); (2) manifests an intent to be bound by the contract, *id.* at 397 (citing *RUS, Inc. v. Bay Indus., Inc.*, No. 01 Civ. 6133 (GEL), 2004 WL 1240578, at *20-21 (S.D.N.Y. May 25, 2004), *aff'd sub nom. Recticel Foam Corp., Inc. v. Bay Indus., Inc.*, 128 Fed. App'x 798 (2d Cir 2005)); or (3) actions show they are in privity of contract or assumed obligations under the contract. *Id.* (citing *Impulse Mktg. Grp. v. Nat'l Small Bus. Alliance, Inc.*, No. 05 Civ. 7776 (KMK), 2007 WL 1701813, at *5-6 (S.D.N.Y. June 12, 2007); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 73-74 (S.D.N.Y. 1999)). Here, there can be no dispute that Morstan and K.S. Billing were involved in the issuance of the allegedly incorrect insurance policy. *See* Am. Compl. ¶¶ 4, 16 -18; *ESI, Inc.*, 61 F. Supp. 2d at 73-74 (finding that the allegations, including that the non-signatory had "attended meetings . . . and participated in the negotiations and drafting" of the contract and was a member of a joint venture with the signatories to the contract, stated a claim under New York law for breach of contract); *Impulse Mktg. Grp.*, 2007 WL 1701813, at *6 (finding that the plaintiff stated a claim for breach of contract where the non-signatory's alleged actions, including "play[ing] a considerable role in

the management and performance of the contract" and stating that it was the real party in interest to the contract, were "closer to that of a party that was acting under the obligation of a contract than one that is merely assisting in its administration").

The court in *MBIA Ins. Corp.*, 706 F. Supp. 2d at 399, found that the defendants "had failed in meeting their heavy burden of showing clearly and convincingly that there is no possibility that Plaintiffs can prevail in their contract claim against" the non-signatory non-diverse defendants and granted the plaintiff's motion to remand despite the fact that that the plaintiffs did not specify how the non-signatory defendants were bound by the contract because the plaintiffs "were under no obligation to do so."[9]  As the court noted, "[h]owever tenuously Defendants think these allegations support a breach of contract claim against a non-signatory, the Court cannot say that it is legally or factually impossible that Plaintiffs can succeed on the merits of a contract claim under these theories."  *MBIA Ins. Corp.*, 706 F. Supp. 2d at 399.  Here, Plaintiff alleges that the non-diverse Defendants were involved in procuring the policy and while perhaps unlikely, it is not impossible that they may be held liable under the above theories.  *See Vanderzalm*, 875 F. Supp. 2d at 187 ("Indeed, even where it appears that the complaint is unlikely to survive a motion to dismiss in state court, remand is only precluded on so-called

---

[9] While the *MBIA Ins. Corp.* court addressed the viability of a breach of contract action alleged in a Notice and Summons under New York law, the pleading standard for a complaint under New York law is also liberal.  *Id.* at 394 ("New York has liberal pleading rules, especially for a summons with notice, which require that a plaintiff need only provide "at least basic information concerning the nature of a plaintiff's claim and the relief sought."); *Schulman v. MyWebGrocer, Inc.*, No. 14 Civ. 7252 (RML) (ENV), 2015 WL 3447224, at *3 (E.D.N.Y. May 28, 2015) (explaining that under New York law "'[a] pleading attacked for insufficiency must be accorded a liberal construction, and if it states, in some recognizable form, any cause of action known to our law, it cannot be dismissed.'" (quoting *Schlackman v. Robin S. Weingast & Assocs., Inc.*, 795 N.Y.S.2d 707, 708, 18 A.D.3d 729, 729 (2d Dep't 2005)); *see also Guggenheimer v. Ginzburg*, 372 N.E.2d 17, 21, 43 N.Y.2d 268, 247 (N.Y. 1977) (describing New York's pleading standard as whether the complaint "set[s] forth [claims] with sufficient factual specificity and fullness, so as to identify the transaction and indicate the theory of redress to enable the court to control the matter and the adversary to prepare").  "It is [also] well established that the New York pleading standard is more forgiving than the federal standard."  *Segal*, 2014 WL 4470426, at *4 (citing *Williams v. Citigroup Inc.*, 659 F.3d 208, 215 n.4 (2d Cir. 2011)).

fraudulent joinder grounds where state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim").

Century's reliance on *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272 (GBD), 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004), is misplaced.  In that case, the plaintiff's allegation against an insurance broker was found not to state a claim because the broker was not a signatory to the contract or "in any other way, a party to the [insurance contracts]." *Id.* at *8. *Highland* was decided on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Id.*  In deciding a motion to remand, however, "[t]he court lends more lenient scrutiny to plaintiff's claims than it would if it were ruling on a motion to dismiss[.]"  *In re Fosamax Products Liab. Litig.*, No. 09 Civ. 4061 (JFK), 2009 WL 3109832, at *2 (S.D.N.Y. Sept. 28, 2009); *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 328-29 (S.D.N.Y. 2007) (explaining that it is not enough for a defendant asserting fraudulent joinder to show that the plaintiff's cause of action would not survive a motion to dismiss).  Accordingly, "while defendants may ultimately prevail in state court, the Court cannot say that there is no possibility that [Plaintiff] will prevail and [a]ny possibility of recovery, however slim, weighs against a finding of fraudulent joinder and in favor of remand."  *Ruiz*, 2010 WL 3322505, at *3 (internal citations and quotations omitted).

*Second*, while "New York courts have held that employees and agents of insurance companies are not liable for an insurer's alleged breach of an insurance contract" "unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal," *Govt. Employees Ins. Co.*, 2015 WL 4656512, at *4 (citing *Mencher v. Weiss*, 114 N.E.2d 177, 179, 306 N.Y. 1, 4 (N.Y. 1953); *Bardi v. Farmers Fire Ins. Co.*, 687 N.Y.S.2d 768, 772, 260 A.D.2d 783, 787 (3d Dep't 1999)), Century has not shown that

Morstan did not hold such an intention.  Morstan not only allegedly issued the insurance policy

but also signed the policy on behalf of Century.  Am. Compl. ¶ 16 ("The policy issued by Century

and signed by defendant Morstan . . . ."); *c.f. Gov't. Employees Ins. Co.*, 2015 WL 4656512, at *4

(finding no evidence of the insurer's employee's "intention to substitute or superadd his personal

liability for, or to, that of his principal" where none of the employees signed the policies on

behalf of the principal and had no involvement in the issuance of the underlying insurance

policies).  Moreover, even if Morstan may not be liable for Century's alleged breach of contract,

"it is well settled that an agent can be held liable for his own negligent acts."  *Murphy v. Cirrus*

*Design Corp.*, No. 11 Civ. 495S (WMS), 2012 WL 729263, at *3 (W.D.N.Y. Mar. 6, 2012) ("An

agent may be held liable for his or her own affirmative acts of negligence or wrongdoing, such as

where the agent has assumed responsibility, as if he were acting on his own account.") (citing

*Reliance Ins. Co. v. Morris Assocs., P.C.*, 607 N.Y.S.2d 106, 108, 200 A.D.2d 728, 730 (2d

Dep't 1994)); *Bedessee Imports, Inc. v. Cook, Hall & Hyde, Inc.*, 847 N.Y.S.2d 151, 154, 45

A.D.3d 792, 794 (2d Dep't 2007) ("The fact that an agent acts for a disclosed principal does not

relieve the agent of liability for its own negligent acts.").  Century has failed to provide clear and

convincing evidence that no possibility exists that Plaintiff can state a cause of action for breach

of contract against K.S. Billing or Morstan under New York law.

### 2.  Count 2: "Errors and Omissions"

The forgoing analysis is sufficient, in itself, to defeat Century's claim of fraudulent

joinder and require remand.  *See Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470

(S.D.N.Y. 2006) ("If even one of the plaintiff's claims against a non-diverse defendant can

survive, the action must be remanded."); *Murphy*, 2012 WL 729263, at *3 (granting the

plaintiff's motion to remand where the complaint asserts, at minimum, a negligence claim

against a non-diverse defendant).  However, Century's claim fails for the additional reason that it

does not provide clear and convincing evidence that Plaintiff cannot prevail on count 2, at least against K.S. Billing.

Century characterizes count 2 as a claim that Morstan and K.S. Billing were negligent in procuring and issuing the insurance policy.[10] *See* Def.'s Opp'n Mem. at 17. Under New York law a claim for negligence requires: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) (quoting *Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)). According to Century, a negligence claim cannot be sustained against K.S. Billing or Morstan because neither owed any duty to Plaintiff and, even if a duty was owed, the statute of limitations bars Plaintiff's claims. *See* Def.'s Opp'n Mem. at 17-19. Century is incorrect.

At the very least, K.S. Billing owed a duty to Plaintiff as Plaintiff's alleged insurance broker and/or agent. *See Travelers Ins. Co. v. Raulli & Sons, Inc.*, 802 N.Y.S.2d 823, 824, 21 A.D.3d 1299, 1300 (4th Dep't 2005) ("As a general rule, an insurance broker acts as an agent of the insured."). "[I]nsurance agents have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so." *Am. Bldg. Supply Corp. v. Petrocelli Group, Inc.*, 979 N.E.2d 1181, 1184, 19 N.Y.3d 730, 735 (N.Y. 2012) (citing *Hoffend & Sons, Inc. v. Rose & Kiernan, Inc.*, 851 N.E.2d 1149, 1152, 7 N.Y.3d 152, 155 (N.Y. 2006)); *Cuomo v. Liberty Mut. Ins. Co.*, 861 N.Y.S.2d 294, 296, 52 A.D.3d 378, 380 (1st Dep't 2008) ("an insurance agent or broker owes no common-law duty to its customer other than to obtain the policy requested within a reasonable period of time, or to inform the customer that

---

[10] Plaintiff characterizes its Amended Complaint as bringing claims against all Defendants for breach of contract, errors and omissions, breach of fiduciary duty, and declaratory judgment. Pl.'s R. Mem. at 9.

it could not do so").  To state a claims for negligence against an insurance broker, "a plaintiff must establish that a specific request was made to the broker for the coverage that was not provided in the policy."  *Am. Bldg. Supply Corp.*, 979 N.E.2d at 1184, 19 N.Y.3d at 735 (citing *Hoffend & Sons, Inc.*, 851 N.E.2d at 1152, 7 N.Y.3d at 155).  While a general request for coverage will not satisfy this requirement, *id.*, here, Plaintiff allegedly made a specific request of K.S. Billing to procure insurance that would provide coverage for sidewalk sheds, but the policy issued did not provide such coverage.  *See* Am. Compl. ¶ 10.  Moreover, any potential failure by Plaintiff to read the policy is not an absolute bar to recovery.  *See Am. Bldg. Supply Corp.*, 979 N.E.2d at 1185, 19 N.Y.3d at 736-37 (finding the fact that the plaintiff did not read or complain about the policy does not bar plaintiff from pursuing the action).  Accordingly, Century cannot show that no possibility exists for Plaintiff to recover from K.S. Billing under count 2.[11]

Century's alternative argument, that count 2 is time-barred under Civil Practice Law and Rules ("C.P.L.R") § 214, presents a more difficult question.  Section 214 requires negligence actions to be brought within three years from when the wrongdoing occurred.  N.Y. C.P.L.R. § 214.  The parties do not dispute that a three year statute of limitations applies to some of Plaintiff's claims.[12]  *See* Pl.'s R. Mem. at 9.  However, Plaintiff contends that the earliest any of these claims began to accrue was October 12, 2012, when Century denied coverage, while Century contends the claim accrued when the alleged wrongdoing—the failure to procure the

---

[11] Plaintiff asserts that Morstan may have become a "broker" under New York's insurance law by investigating, through Majestic, "whether it had provided the correct policy" for Plaintiff's needs.  Pl.'s R. Mem. at 6 (citing *B & A Demolition and Removal, Inc.*, 941 F. Supp. 2d at 316 ("an insurance broker can be held to be the legal agent of both the insurer and the insured, in certain circumstances, if there is evidence of some act on the part of the insurance company or facts from which the authority to represent it may be inferred.")).  The Court does not address the question of whether Morstan owed a duty, as a broker, fiduciary, or otherwise, to Plaintiff.  Where, as here, a plaintiff establishes at least one of its claims against a non-diverse defendant can survive, the action shall be remanded.  *See Kuperstein*, 457 F. Supp. 2d at 470; *Murphy*, 2012 WL 729263, at *3.

[12] Plaintiff concedes that their "complaint asserts claims against all defendants for errors and omissions (three-year statute of limitations) [and] breach of fiduciary duty (three-year statute of limitations)."  Pl.'s R. Mem. at 9.

proper insurance coverage—occurred, either on March 5, 2012, when K.S. Billing submitted the Application for Plaintiff's insurance, or on March 7, 2015, when K.S. Billing allegedly requested Morstan to bind Plaintiff's coverage.  *Id.* at 8, 9; *see also* Dement Aff. ¶¶ 5, 8.  Plaintiff amended to add the non-diverse Defendants on July 6, 2015.  Docs. 1, 12.  Accordingly, if Plaintiff's negligence claim began to accrue when the allegedly incorrect insurance policy was procured, either on March 5 or 7, 2012, Plaintiff's claim against K.S. Billing is untimely.  However, if Plaintiff's claim accrued beginning October 12, 2012, when Century first denied coverage, Plaintiff's claim is timely.

Courts within the New York Appellate Divisions and this Circuit, however, have reached different results regarding when a negligence claim against an insurance broker for failure to procure the requested insurance coverage begins to accrue.  *See Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166, 172 (E.D.N.Y. 2006) (discussing the courts' conflicting results within New York State and the Southern District regarding the accrual date in negligence claims).  Some courts, both in New York State and this Circuit, have found that, in this context, negligence claims accrue when the insurance policy is procured.  *See One Beacon Ins. v. Terra Firma Const. Mgt. & Gen. Contracting, LLC*, No. 02 Civ. 7492 (SAS), 2004 WL 369273, at *3 (S.D.N.Y. Feb. 26, 2004) (holding that the statute of limitations barred the negligence claim against an insurance broker because such a claim "accrues when the wrongdoing occurs and not when the wrongdoing is discovered" and the "latest possible date of wrongdoing . . . was the date the First [insurance] Policy was procured."); *Morse Diesel Intern. v. CNA Ins. Cos.*, 707 N.Y.S.2d 499, 500, 272 A.D.2d 455, 456 (2d Dep't 2000) (holding that "the cause of action against the [insurance brokers] accrued when the allegedly negligent acts or omissions occurred,

that is, when the appellants failed to have [the plaintiff] named as an additional insured . . . not when [the insurer] disclaimed coverage").

Other New York State and Federal courts have held that a negligence claim does not accrue until a request for coverage is denied on the theory that the plaintiff must sustain an injury in order for the claim to accrue.  *See Pulte Grp., Inc. v. Frank Crystal & Co., Inc.*, No. 11 Civ. 6214 (LAK), 2012 WL 1372158, at *2 (S.D.N.Y. Apr. 18, 2012) ("In the specific context of a claim for the negligent failure of an insurance broker to procure the coverage sought by its client," the cause of action accrues only when an injury is sustained, which here "occurs when the carrier disclaims liability."); *Bonded Waterproofing Servs., Inc. v. Anderson-Bernard Agency, Inc.*, 927 N.Y.S.2d 133, 135, 86 A.D.3d 527, 530 (2d Dep't 2011) (finding that where a claim against an insurance agent or broker for the failure to obtain proper insurance coverage sounds in tort, the injury occurred and the plaintiffs were damaged when coverage was denied); *Lavandier v. Landmark Ins. Co.*, 810 N.Y.S.2d 45, 46, 26 A.D.3d 264, 264-65 (1st Dep't 2006) (holding that the negligence claim against an insurance broker accrued "not at the time of the alleged breach of duty but, subsequently, at the time of injury, *i.e.,* in June 2001 when [the insurer] disclaimed [coverage].").   This acknowledged split of authority means that Century cannot establish, much less by clear and convincing evidence, that under New York law Plaintiff's negligence claim is barred by the statute of limitations.  In any event, as discussed *supra* at Section IV.B.i, Plaintiff's breach of contract claims may be sustained against the non-diverse Defendants.

Accordingly, Century has not established, by clear and convincing evidence, that Plaintiff cannot sustain a cause of action against K.S. Billing or Morstan and thus, the Court finds the non-diverse Defendants were not fraudulently joined.

## V.      Conclusion

All four factors favor joinder and permissive joinder under Rule 20(a)(2) is thus appropriate.  The proper addition of the non-diverse Defendants, however, destroys complete diversity between the parties and requires that the action be remanded pursuant to 28 U.S.C. § 1447(e).

For the foregoing reasons, Plaintiff's motion to remand the case to New York Supreme Court is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 21, and REMAND the case to the Supreme Court of the State of New York, Bronx County.

IT IS SO ORDERED.

Dated:      October 28, 2015
            New York, New York

                                                  _____
                                                  Edgardo Ramos, U.S.D.J.